UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WARREN SCOTT                                          CIVIL ACTION NO.

VERSUS                                                19-659-SDD-SDJ

THE ROMAN CATHOLIC CHURCH
DIOCESE OF BATON ROUGE, ET AL.

## ORDER

Before the Court are three pending motions filed by *pro se* Plaintiff Warren Scott: a Motion to Appoint Counsel (R. Doc. 10), filed on November 20, 2019; a second Motion to Appoint Counsel (R. Doc. 13), filed on February 12, 2020; and a Request for Stay in Proceedings (R. Doc. 15), also filed on February 12, 2020.  For the reasons that follow, all three motions are denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On September 30, 2019, Plaintiff filed a form Complaint[1] against Defendants, The Roman Catholic Church Diocese of Baton Rouge (the "Diocese of Baton Rouge") and St. Jude the Apostle Catholic Church ("St. Jude") (collectively, "Defendants"). In his Complaint, Plaintiff states that he was employed by the Diocese of Baton Rouge, which assigned him to work at St. Jude.[2] Plaintiff alleges that Defendants discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[3] Specifically, Plaintiff alleges that he was "spied on," harassed, subjected to a hostile work environment, and discriminated and retaliated against by Defendants because of his age and race.[4] Based on documents attached to the Complaint, it appears that Plaintiff filed a Charge of Discrimination, dated March 2, 2019, with

---

[1] R. Doc. 1.
[2] R. Doc. 1, p. 4.
[3] R. Doc. 1, pp. 4-5.
[4] R. Doc. 1, pp. 4-5.

the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination[5] and later received a Notice of Right to Sue letter, dated July 26, 2019, stating that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes."[6]

Plaintiff filed a Motion to Proceed *In Forma Pauperis* on October 1, 2019,[7] which this Court granted that same day.[8] On November 20, 2019, Plaintiff filed his first Application Under Section 706(f) of Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), seeking appointment of an attorney.[9]  Subsequently, on February 12, 2020, Plaintiff filed a second Application for the appointment of counsel[10] as well as a Request for Stay in Proceedings, seeking a stay of this litigation until counsel has been appointed to represent him.[11]

## II.  LAW AND ANALYSIS

### A.  Appointment of Counsel

Title VII provides for the appointment of counsel "[u]pon application…and in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1). The decision of whether to provide counsel to a Title VII plaintiff rests within the sound discretion of the court, as a Title VII plaintiff has no automatic right to appointment of counsel. *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990) (citing *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305, 1308, 1309 (5th Cir. 1977)).  In determining whether counsel should be appointed, courts should consider the following factors: (1) the plaintiff's financial ability to retain counsel; (2) the plaintiff's efforts to obtain counsel; and (3) the merits of the plaintiff's claims of discrimination. *Gonzalez*, 907 F.2d

---

[5] R. Doc. 1-1, pp. 3-5.
[6] R. Doc. 1-1, p. 1.
[7] R. Doc. 2.
[8] R. Doc. 3.
[9] R. Doc. 10.
[10] R. Doc. 13.  This application is identical to Plaintiff's initial November 20, 2019 application, though it does not contain the signature page and the attachments that appear in R. Doc. 10.
[11] R. Doc. 15.

at 580 (citing *Caston*, 556 F.2d at 1309). Although the court must consider all these factors, "[n]o single factor is conclusive." *Id.* "In evaluating whether the appointment of counsel is proper, the district court considers the type and complexity of the case, the litigant's ability to investigate and present the case, and the level of skill required to present the evidence." *Blackman v. Global Indus. Offshore, L.L.C.*, 228 Fed. Appx. 410, 411 (5th Cir. 2007) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)). The Court considers each of the *Gonzalez* factors in turn.

### 1. Plaintiff's Financial Ability to Obtain Counsel

Plaintiff's Motions to Appoint Counsel indicates he received $2,940.00 in wages, salary, commissions, or earned income over the previous twelve months.[12] Plaintiff also received some money from government assistance and from pensions, annuities, workmen's compensation, disability, or insurance during that same period.[13] However, Plaintiff states that he currently has a balance of $50.00 in his checking or savings account.[14] This factor weighs in Plaintiff's favor.[15]

### 2. Plaintiff's Efforts to Obtain Counsel

Plaintiff asserts that he has contacted at least seven attorneys about his case.[16] They all either declined to take Plaintiff's case or did not reply to Plaintiff's inquiries.[17] However, Plaintiff does not provide the Court with the reasons why the three attorneys who declined to take his case did so. Likewise, while Plaintiff asserts that he has "search[ed] to find [an] attorney to take [his] case on contingency basis to no avail,"[18] he does not indicate which attorneys, if any, he discussed

---

[12] R. Doc. 10, p. 3.
[13] *Id*.
[14] *Id*.
[15] The Court previously granted Plaintiff's Motion to Proceed *In Forma Pauperis* based on Plaintiff's financial situation. *See* R. Doc. 3.
[16] R. Doc. 10, p. 5.
[17] *Id.*
[18] R. Doc. 10, p. 6.

the possibility of a contingent fee arrangement with or what their reasons for declining representation under those conditions were.

This factor neither supports nor weighs against Plaintiff in his effort to obtain court-appointed counsel. Plaintiff does not provide the Court with enough information to make a determination as to whether he made a reasonably diligent to obtain representation. "A reasonably diligent attempt to secure counsel means, at a minimum, speaking to an attorney about the merits of the case and pursuing a contingent fee arrangement." *Weber v. Holiday Inn*, 42 F.Supp.2d 693, 698 (E.D. Tex. 1999) (citation omitted); *see also Johnson v. East Baton Rouge Fed'n of Teachers*, No. 16-423, 2016 WL 10587122, at *2 (M.D. La. July 22, 2016) (in finding this factor neither supported nor weighed against plaintiff in her effort to obtain court-appointed counsel, court noted that "[w]hile Plaintiff contacted and spoke with several attorneys, she does not appear to have sought representation on a contingent fee basis."); *Smith v. Baton Rouge Radiology Group*, No. 12-400, 2013 WL 3246142, at *2 (M.D. La. June 24, 2013) ("The plaintiff did not state whether or not she had inquired about the possibility of a contingency fee agreement with any attorney."). Although this factor remains neutral, Plaintiff's failure to obtain counsel, despite his efforts, may indicate that the resources needed to take on Plaintiff's action outweigh its merits.

### 3. The Merits of Plaintiff's Claims and Ability to Present Claims

The ability to hire counsel ordinarily results in the denial of a plaintiff's request for appointment of counsel. *See Poindexter v. F.B.I.*, 737 F.2d 1173, 1186 (D.C. Cir. 1984) ("If a court finds that a plaintiff *can* afford to hire counsel, this ordinarily will be a dispositive ground for denying the request for appointment.") (emphasis in original). However, courts recognize the possibility that "even a plaintiff capable of paying an attorney, and asserting a meritorious claim, will be unable to secure representation," particularly with regard to employment discrimination

cases. *Id.*; *see also Johnson*, 2016 WL 10587122, at *2 (citing *Petete v. Consolidated Freightways*, 313 F. Supp. 1271, 1272 (N.D. Tex. 1970) (recognizing the reluctance of attorneys "to undertake the specific and complex challenges of a Title VII lawsuit which are not common to more frequently litigated areas of the law")). The "remedial purposes of Title VII may compel appointment of counsel" in that particular circumstance. *Poindexter*, 737 F.2d at 1186.

With that in mind, the Court has considered the merits of Plaintiff's claims. Courts considering this factor often look to the EEOC's determination to assist in determining whether a plaintiff's claim is reasonable. *See id*. at 1187-88. Here, Plaintiff has provided the Notice of Right to Sue letter he received from the EEOC to his Complaint, which states: "The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."[19] While not dispositive of any substantive issues in Plaintiff's Complaint, this determination by the EEOC weighs against appointment of counsel.

Although Plaintiff is representing himself, he has filed detailed information to articulate the basis of his claims. *See, e.g., Salmon v. Corpus Christi Indep. Sch. Dist*., 911 F.2d 1165, 1166-67 (5th Cir. 1990) (considering the plaintiff's education and demonstrated ability to represent himself in determining appointment of counsel not warranted). Plaintiff was most recently employed for over twelve years with Defendants as a "Maintenance Technician Supervisor for Custodial Services."[20] Plaintiff's background combined with his filings before the Court (and with the EEOC) reflect an understanding of the proceedings and an ability to address the issues present in this litigation.

---

[19] R. Doc. 1-1, p. 1.
[20] R. Doc. 1-2, p. 1.

Additionally, *pro se* litigants are held to less stringent standards in presenting their cases. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers"); *S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that courts must construe *pro se* plaintiff's allegations and briefs more permissively and liberally) (citations omitted)). In general, this Court is liberal in reviewing *pro se* pleadings and motion, giving *pro se* plaintiffs ample opportunity to amend if necessary, and granting generous extensions of time to comply with orders. Accordingly, this Court's liberal construction of *pro se* pleadings and motions, combined with Plaintiff's apparent ability to litigate this action *pro se*, convinces the Court that appointment of counsel is not warranted at this time.

### B. Stay of Proceedings

In his Request for Stay in Proceedings, Plaintiff asks for a stay pending appointment of counsel.[21] Because, as set forth above, this Court has determined that appointment of counsel for Plaintiff is not here warranted, Plaintiff's request for a stay pending such appointment is moot.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's first Motion to Appoint Counsel (R. Doc. 10) and second Motion to Appoint Counsel (R. Doc. 13) are **DENIED**. **IT IS FURTHER ORDERED** that Plaintiff's Request for Stay in Proceedings (R. Doc. 15) is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on July 9, 2020.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] R. Doc. 15.